UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

CALVIN EUNICE MARSHALL,

        Plaintiff,

v.

UNKNOWN VIEAU, et al.,

        Defendants.
_____/

Case No. 2:25-cv-207

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has filed a motion for leave to proceed *in forma pauperis*. (ECF No. 2.) However, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).

Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action. Further, Plaintiff has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[1] Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

____

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. However, the miscellaneous administrative fee "does not apply to applications for a writ of habeas corpus or to persons granted

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule

---

*in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the Michigan federal courts. In three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Marshall v. Westcomb*, No. 2:25-cv-144 (W.D. Mich. July 31, 2025); *Marshall v. Rewerts*, No. 1:24-cv-390 (W.D. Mich. May 16, 2024); *Marshall v. Evans*, No.2:23-cv-10725 (E.D. Mich. Jan. 16, 2024).

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id.* Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following URF personnel in their personal capacities: Corrections Officer Unknown Vieau, Assistant Deputy Warden Unknown Fraizer, Prison Counselor Unknown Davidson, Resident Unit Manager Unknown Party, Chaplain Unknown Party, and Registered Nurses Unknown Duncan, Unknown Nagy, and Unknown Russo. (ECF No. 1, PageID.2–3.)

Plaintiff alleges that on December 2, 2024, Plaintiff was in the URF compound and requested to be moved because he had been threatened. (*Id.*, PageID.4.) On December 6, 2024, Plaintiff was assaulted and received a misconduct for fighting, which resulted in the suspension of his parole. (*Id.*) On January 28, 2025, Plaintiff was transferred to the Alger Correctional Facility (LMF). (*Id.*) In April of 2025, Plaintiff filed a § 1983 action (not the present action) asserting failure to protect him, as well as a habeas action, but LMF staff intercepted his legal mail on May 17, 2025, and that Plaintiff received a false misconduct and Notice of Intent. Plaintiff was sent to segregation, and his phone and legal mail were taken. (*Id.*, PageID.6–7.) Plaintiff claims that his legal mail was taken solely because it had P.C. Wonnacot's name on it. (*Id.*, PageID.7.)

Plaintiff states that he was returned to URF on May 30, 2025, "for harassment purposes." (*Id.*, PageID.4.) Plaintiff's transfer to and from LMF resulted in the loss of his property, which

4

included legal property. (*Id.*) Plaintiff was placed in a cell without power or a cable outlet, and with the cold water turned off. (*Id.*, PageID.7.) Plaintiff wrote to the non-parties Warden, Deputy Warden, and Psychologist O'Neill. (*Id.*) The toilet was broken from June 17, 2025 until July 11, 2025. (*Id.*) On July 3, 2025, Plaintiff's tablet was broken, and his property was destroyed during a cell shakedown. Plaintiff does not specify who was involved in the shakedown. (*Id.*) Plaintiff did not receive chow for four meals in a row on July 9, 2025, and the morning of July 10, 2025, and when he asked for a grievance form, officers told him that there were none on the compound. (*Id.*) Plaintiff does not allege facts showing who was responsible for the denial of his meals. On July 19, 2025, Plaintiff asked for a grievance form due to inadequate food, health care, clothing, and lack of showers, and Defendants Vieau, Davidson, Fraizer, and Unknown Resident Unit Manager told him that there weren't any forms. (*Id.*) Plaintiff states that he spoke with Assistant Attorney General William J. Predhomme II via Zoom, who told him that he could not get Plaintiff moved although he felt for his situation. (*Id.*, PageID.7–8.)

Plaintiff states that after he was placed in segregation on July 11, 2025, he was denied a shower for 21 days and was only given a single shirt and pair of pants. (*Id.*, PageID.4.) Plaintiff states that he subsequently developed a rash on his left lower back and his right lower ankle. (*Id.*) Plaintiff states that he was not given additional clothing for 40 days. (*Id.*, PageID.5.) Plaintiff states that he was unable to wash because he would have to be naked, and Defendants Vieau, Frazier, Davidson, and Unknown Resident Unit Manager had tried to write sexual misconduct tickets on him. (*Id.*)

Plaintiff states that he is a chronic care inmate and that he has high cholesterol, has been vomiting for months, has been feeling nauseated, and has chest pains, headaches, and migraines. (*Id.*) Plaintiff states that on June 22, 2025, Defendants Duncan, Nagy, and Russo watched him

5

vomit but ordered him to return to his unit. (*Id.*) Plaintiff had blood work done on July 8, 2025, but no one followed up with him. (*Id.*) Plaintiff alleges that on July 24, 2025, Defendant Duncan watched Plaintiff vomit but commented that Plaintiff was not throwing up. (*Id.*) Defendant Duncan also asked about Plaintiff's chest pains and told Plaintiff he would need to file a kite. (*Id.*) Plaintiff does not allege whether he filed a kite or, if so, what was done regarding his kite.

Plaintiff states that he requested a diet for high cholesterol but did not receive a response. (*Id.*) Plaintiff does not specify who handled his request. Plaintiff asserts that the food he receives is either cold, raw, on a dirty tray, or tasting of chemicals and that when he complains to unnamed staff, they all tell him to file a lawsuit. (*Id.*, PageID.6.) Plaintiff states that he did not start experiencing nausea and vomiting until he returned to URF from LMF. (*Id.*) Plaintiff states that his requests for special diets, substitute meals, or healthy choice meals were all denied, but Plaintiff does not allege by whom. (*Id.*)

Plaintiff also claims that he requested religious meals at URF but that he was told to either not eat, or to file a lawsuit. (*Id.*) Plaintiff states that Defendant Davidson stated, "we're not Muslim." (*Id.*) Defendant Davidson also told Plaintiff to file a grievance but then stated that there were no grievance forms in the unit. (*Id.*) Plaintiff states that he attempted to contact Defendant Unknown Chaplain before finally going in person, at which point the Defendant Chaplain told him to "f**k off." (*Id.*) Defendant Chaplain also told Plaintiff that he did not believe he was a Muslim and to file a lawsuit. (*Id.*) Plaintiff asserts that his request for a religious diet was never granted by Defendant Chaplain. (*Id.*)

Plaintiff alleges that on July 31, 2025, he sent out legal mail but that an unknown male counselor stated that the lawsuit was not going and "to file another one dumb ass." (*Id.*, PageID.8.) Plaintiff never got a receipt that the mail had been placed in outgoing mail. (*Id.*) Plaintiff wrote

6

the mail room but did not receive a response. (*Id.*) Plaintiff does not name any mail room employees as Defendants. Plaintiff further states that his legal mail has been intercepted and read by individuals who are not named as defendants in this case, causing the dismissal of Case No. 2:23-cv-11623[2] and the denial of his request to reopen Case No. 1:24-cv-829[3], and that Defendants Vieau, Fraizer, Davidson, and Unknown Resident Unit Manager have denied him access to the law library. (*Id.*, PageID.9.)

Plaintiff makes a conclusory assertion that Defendants violated the Americans with Disabilities Act and the Rehabilitation Act. Plaintiff claims that Defendant Russo violated the Eighth Amendment by failing to "file[] for blood thinner meds or any chest meds for over a year." (*Id.*, PageID.9–10.) Plaintiff states that he told each of the named Defendants that his food was always "terrible" and that they all laughed and told him to file a lawsuit or a grievance. (*Id.*, PageID.11.) Plaintiff states that his food is either raw, undercooked, cold, or missing the main course, or that there is water in his food. Plaintiff also asserts that he is given old milk and old juice and that there is debris inside his tray; however, Plaintiff fails to allege that any of the named Defendants are responsible for this. (*Id.*) Plaintiff claims that Defendants Vieau, Fraizer, Davidson, and Unknown Resident Unit Manager are aware of his requests for a liquid diet because of vomiting. (*Id.*) Plaintiff states that his request for a "healthy choice" meal was never ordered and that the doctor told him that he should have had a special diet, "but that's the MDOC for ya." (*Id.*) Plaintiff further asserts that the meals served are based on a 2000 calorie diet and that he has lost over 19 pounds. (*Id.*, PageID.12–13.) However, Plaintiff does not state that the weight loss caused

---

[2] The Court notes that in *Marshall v. Lovelace et al.*, No. 2:23-cv-11623 (E.D. Mich. May 1, 2025), the Defendants' motion for summary judgment was granted on May 1, 2025, dismissing Plaintiff's case without prejudice for failure to exhaust his administrative remedies. *Id.* ECF Nos. 47 & 48.
[3] The Court notes that *Marshall v. Jensen et al.*, No. 1:24-cv-829 (W.D. Mich.) was reopened on July 11, 2025. *Id.*, ECF No. 11, PageID.47.

7

him any physical harm. Nor does Plaintiff specify his current weight, or state that his weight is not within a healthy range.

Plaintiff alleges that on August 13, 2025, Defendant Fraizer stated, "you filed that lawsuit so deal with the consequences now [you are] going to a level V an[d] you will never parole max[] out idiot." (*Id.*, PageID.12.) Plaintiff states that he fears a retaliatory transfer to a level V facility. (*Id.*) Plaintiff seeks damages as well as declaratory and injunctive relief. (*Id.*, PageID.14.)

Plaintiff's allegations fail to show that Plaintiff was in imminent danger of serious physical injury from the Defendants when he filed this complaint. Despite his numerous allegations, he fails to specifically allege facts showing an imminent threat of serious physical injury. The majority of Plaintiff's assertions involve past conduct. In addition, many of Plaintiff's claims are conclusory and fail to involve the named Defendants.

Plaintiff claims that Defendant Chaplain has continued to refuse him a religious diet but fails to show that such a refusal poses a risk of imminent danger. Plaintiff makes a conclusory allegation that Defendant Russo failed to "file[] for blood thinner meds or any chest meds for over a year," (ECF No.1, PageID.9–10), but fails to allege facts showing that Defendant Russo had the ability to prescribe medications, that he had a medical condition which actually required such medications, or that the denial of these medications placed him in any danger. Nor does Plaintiff's assertion that he complained to the named Defendants that his food was always "terrible," and that they all laughed and told him to file a lawsuit or a grievance show that they were responsible for the contents of his meals. Furthermore, the assertion that Defendants Vieau, Fraizer, Davidson, and Unknown Resident Unit Manager were aware of Plaintiff's requests for a liquid diet does not show that they were responsible for denying the requests. (*Id.*, PageID.11.)

Plaintiff fails to allege that any doctor actually ordered a special diet for him because of his medical condition, or that any named Defendants refused to comply with a doctor's order. Nor does Plaintiff name any doctor as a defendant in this case or assert that any of the named Defendants had the authority to prescribe a special diet or medication.[4]

Plaintiff's conclusory allegations do not show that he is in imminent danger from the named Defendants. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (seminal case, holding that there must be some nexus between the imminent danger alleged by the prisoner and the legal claims asserted in his complaint); *Andrews v. Cervantes*, 493 F.3d 1047, 1053–54 (9th Cir. 2007); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999) (holding that a prisoner does not meet the imminent-danger exception when he is no longer facing risk from the defendants he sues, because he has since been transferred to a different prison); *see also Pinson v. U.S. Dep't of Justice*, 964 F.3d 65, 71 (D.C. Cir. 2020) (holding that a nexus between the alleged imminent danger and the claims raised is required to avoid the conclusion that, at the same time it established the three-strikes rule, Congress intended to "'engraft[] an open-ended exception that would eviscerate the rule'") (quoting *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (2d Cir. 2001)); *Meyers v. Comm'r of Soc. Sec. Admin.*, 801 F. App'x 90, 94–95 (4th Cir. 2020) (citing *Pettus*, *inter alia*, and holding that "the better reading of the Imminent Danger Provision is that it requires a relationship between the imminent danger alleged in the IFP application and the facts alleged and relief sought in the underlying claim"); *Ball v. Hummel*, 577 F. App'x 96, 96 n.1 (3d Cir. 2014) (citing *Pettus*).

---

[4] In Plaintiff's complaint, he states that he was being seen by a doctor or doctors who are not named as Defendants, and that they told him that he needed medications, a special diet, and an EKG. (ECF No. 1, PageID.13.) However, Plaintiff fails to allege whether any doctor actually ordered medications, a special diet, or an EKG, and if so, whether any of the named Defendants prevented Plaintiff from receiving such in contradiction of the doctor's orders.

9

Although the Sixth Circuit has not yet specifically addressed whether the imminent-danger exception requires a nexus between the danger and the allegations of the complaint, *see Vandiver*, 727 F.3d at 588 (declining to reach issue), this Court concurs with the uniform opinion of all seven circuits that have addressed the issue: some nexus between the imminent danger and the claims raised is required in order to protect the meaning of the entire provision. This nexus requirement is not the result of a judicially created element imposed upon the language of the statute. Instead, as the *Pettus* court recognized, a reading of the statute that incorporates a nexus rule flows from the fundamental rule of statutory construction requiring that a statute be read as a whole. 554 F.3d at 297. That rule of construction has been regularly repeated by the Supreme Court:

> The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)), *quoted in Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007); *see also Clark v. Rameker*, 573 U.S. 122, 131 (2014) (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)). An equally fundamental canon of statutory interpretation is that exceptions to a general rule must be read narrowly. *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). And from this last canon arises the related principle that exceptions must not be interpreted so broadly as to swallow the rule. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (rejecting an interpretation of a statutory exception that "would swallow the rule").

10

As applied to § 1915(g), the exception must be read in light of the strong general thrust of the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton*, 106 F.3d at 1286. In addition, § 1915(g) itself states that "*[i]n no event* shall a prisoner bring a civil action or appeal . . ." if he has three strikes, unless his complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 U.S. at 297. Interpreting the statute without some link between the imminent danger alleged and the redress sought would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as he wishes on any subject—as long as he can state that he is in imminent danger from something, even if that something is unrelated to his claims and unrelated to the named defendants. *Pettus*, 554 F.3d at 297; *Pinson*, 964 F.3d at 71. Such a reading of the statute would be inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule. *Clark*, 489 U.S. at 739; 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 246–47 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions."). Because Plaintiff's allegations concerning the ostensibly "imminent" danger he faces are incapable of redress in the instant case against the named Defendants, Plaintiff cannot demonstrate the requisite nexus. Permitting Plaintiff to proceed *in forma pauperis* based on allegations of unrelated imminent danger would permit the exception to § 1915(g) to swallow the rule.

Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to

proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

## **Conclusion**

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma* pauperis. The Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[5]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Further, should Plaintiff appeal this decision, he must pay the full appellate filing fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.

Dated:  October 29, 2025            /s/ Jane M. Beckering
                                    Jane M. Beckering
                                    United States District Judge

---

[5] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.